HAPGOOD and others *v.* HEWITT.*

*(Circuit Court, D. Indiana.)*

1. PATENTS—INVENTORS—RIGHTS OF.
   Persons are not deprived of the right to take out patents for their inventions by being in the service of others, unless they have been hired and paid to exercise their inventive faculties for their employers.

2. SAME—RIGHTS OF EMPLOYE.
   A contract, by which one person agrees to pay a sum of money for the time, labor, and skill of another for a given period, gives the emplyer no right to an assignment of a patent that has been issued to the employe for an invention made during the period of his employment.

*Affirmed. See 7 Sup. Ct. Rep. 193.

3. SAME—RIGHTS OF EMPLOYER—TRANSFER.

If, under such contract, the employer had any right to the invention by virtue of the terms of the contract of employment, it was a mere naked license to make and sell the patented improvement as a part of its business. Such a right is a mere personal one, and is not transferable, and is extinguished by the dissolution of the corporation which exercised it.

In Equity.

*John G. Williams* and *E. W. Pattison,* for plaintiffs.

*Wood & Boyd* and *Chapman & Hammond,* for defendant.

GRESHAM, D. J. This is a suit brought by Charles H. Hapgood, James H. Hesse, and John Parker, trustees of Hapgood & Co., a defunct corporation, organized under the laws of the state of Missouri, and the Hapgood Plow Company, a corporation organized under the laws of the state of Illinois, against Horace L. Hewitt.

The relief sought is a decree compelling the defendant to assign to the Hapgood Plow Company, as the successor of the Hapgood Company, or to the trustees of the last-named company, in trust for the Hapgood Plow Company, certain letters patent which the defendant caused to be issued to him for improvements in iron sulky plows. The bill is demurred to for want of equity. It avers in substance:

That the defendant represented to the Hapgood Company, which was organized at St. Louis, under the laws of Missouri, to manufacture and sell plows and other implements, that he had had large experience in the manufacture and sale of plows, and devising and making improvements of the same; that if employed by the company he would devote his time and services to getting up and perfecting plows and other goods in its line of business; that relying upon the defendant's representations as to his skill in the manufacture of plows, and in devising improvements of the same, he was given employment by the company; that after being so employed the defendant became the owner of some of the company's stock, and was made its superintendent; that in consideration of a salary of $3,000 a year the defendant agreed to to devote his time to the service of the company, and his skill in devising and making improvements in plows manufactured by it; that during his regular working hours, and with the aid of instructions, directions, and suggestions from the officers and employes of the company, the defendant succeeded in getting up an improved iron sulky plow, the company paying for all the labor and materials which were used in its construction; that the company manufactured plows after the model so gotten up by the defendant and other employes, and on the twenty-sixth of March, 1878, the defendant being no longer in the service of the company, a patent was issued to him, on his application, covering certain parts of the improved iron sulky plow, and the defendant now claims the exclusive ownership of such patent; that after the granting of the patent to the defendant, viz., on the first of January, 1880, the corporation of Hapgood & Co. was dissolved, and the trustees named were appointed, under the laws of Missouri, to wind up its affairs; that on

the twenty-seventh of December, 1879, a corporation was organized, under the laws of Illinois, under the name of the "Hapgood Plow Company;" that in getting up said plow, and the improvements which it embraced, the defendant did no more than it was his duty to do under his employment, and his employers, Hapgood & Co., in equity became the owners of the right to manufacture said plow, and of the right to a patent for anything that was patentable as an improvement of the same; and that the Hapgood Plow Company became the successor of the Hapgood Company, and owner of all its assets of every kind and description, including its equitable right to said letters patent.

Persons are not deprived of their right to their inventions while in the service of others, unless they have been hired and paid to exercise their inventive faculties for their employers. A contract by which one person agrees to pay a sum of money for the time, labor, and skill of another, for a given period, gives the employer no right to an assignment of a patent that is issued to his employe for an invention made during the period of his employment. The defendant represented to Hapgood & Co. that he had had a large experience in the manufacture and sale of plows, and that he had a thorough knowledge of that business. It was the benefit of that knowledge and experience the defendant's employer desired, and for which it contracted. The defendant was not expressly required by his contract with Hapgood & Co. to exercise his inventive faculties for the benefit of the company, and there is nothing in the bill from which it can be fairly inferred that he was required or expected to do so. The bill avers that the defendant was aided and assisted by advice and suggestions from other officers and employes of the company in getting up the improved plow for which he obtained the patent. If the invention was the joint work of the defendant and his co-employes he was not entitled to a patent as sole inventor. But, however this may have been, if Hapgood & Co. had any right to the invention by virtue of the terms of the defendant's contract of employment, it was a mere naked license to make and sell the patented improvement as a part of its business. This right, if it existed, being a mere personal one, was not transferable, and it was extinguished with the dissolution of the corporation. Curtis, Pats. (4th Ed.) § 213; *Cont. Wind-mill Co.* v. *Empire Wind-mill Co.* 4 Fisher, Pat. Cas. 428.

Demurrer sustained.